680 So.2d 1171 (1996)
STATE of Louisiana
v.
Bruce YOUNG, Jr.
No. 96-K-0195.
Supreme Court of Louisiana.
October 15, 1996.
Rehearing Denied November 15, 1996.
John Norman Samaha, Hunter & Samaha, Baton Rouge, for Appellant.
Richard P. Ieyoub, Attorney General, Douglas Moreau, District Attorney, and Monisa L. Thompson, Baton Rouge, for Respondent.

ISSUE
KIMBALL, Justice.[*]
We granted certiorari to resolve a conflict among the circuits and determine whether the prohibition on appealing a sentence that is the result of a plea bargain contained in La.C.Cr.P. art. 881.2(A)(2)[1] encompasses plea agreements involving sentencing caps as well as specific sentences.

FACTS
On the night of May 29, 1991, Detectives Grim and Shelton were working as undercover narcotics officers. While the detectives were riding in a truck, defendant flagged *1172 them down and asked them what they were looking for. The detectives told the defendant they were looking to buy cocaine. A cocaine sale was negotiated between the detectives and defendant and defendant left to retrieve the cocaine.
After the defendant returned with the cocaine, he got inside of the detectives' parked vehicle and asked them if they were police officers. The undercover detectives denied the fact they were police officers. The detectives and defendant exited the vehicle because the defendant had become nervous about the situation. Defendant then produced four baggies, each containing a white powdery substance for the detectives to examine. Detective Grim examined the baggies and indicated he wanted to buy them. While pretending to be removing money from his pocket, Detective Grim identified himself as a police officer and advised defendant he was under arrest.
Defendant responded by attempting to run away from the detectives, but was restrained by them after taking a few steps. A struggle ensued between the detectives and defendant when the officers attempted to handcuff defendant. While Detective Shelton was attempting to place handcuffs on defendant, defendant bit Shelton's arm. In the course of the struggle, defendant grabbed Shelton's gun and struck Shelton with it on his head in three different areas causing lacerations.[2] Defendant began swinging the weapon wildly and continued to struggle with the detectives. Defendant attempted to strike Shelton again and stated: "I'll kill you." While still in possession of Shelton's gun, defendant fled the scene.
A felony warrant for defendant was issued in connection with the May 29 incident. Defendant was arrested on August 27, 1991 following a violent struggle with three Baton Rouge City Police officers.
Defendant was charged by Bill of Information with: (1) Count I: Distribution of a controlled dangerous substance (cocaine) in violation of La. R.S. 40:964; (2) Count II: Possession of a firearm by a convicted felon (defendant had previously been convicted of simple burglary) in violation of La. R.S. 14:95.1; and (3) Count III (August 27 incident): Possession of a firearm by a convicted felon (defendant had previously been convicted of simple burglary) in violation of La. R.S. 14:95.1. A separate Bill of Information charged defendant with aggravated battery in violation of La. R.S. 14:34 in connection with the May 29 incident.
Defendant pled guilty to the distribution of cocaine charge and waived his right to a jury trial on the other three charges. The record indicates that an unrelated charge of simple burglary was dropped. According to the record, the trial judge agreed not to sentence the defendant to more than thirty years imprisonment on all the remaining charges (including the cocaine charge).
After a bench trial on the remaining charges, the trial judge found the defendant not guilty on both counts of possession of a firearm by a convicted felon and guilty of the aggravated battery charge. The trial judge sentenced defendant to serve two consecutive ten year sentences of imprisonment at hard labor, one for the cocaine charge and one for the aggravated battery charge. The defendant was then adjudicated a second felony habitual offender, which resulted in his cocaine sentence being vacated and replaced with a fifteen year sentence. In light of the fact that defendant had been deemed an habitual offender, the trial court then granted his motion to reconsider the aggravated battery sentence and reduced it to five years (resulting in the same sentence of twenty years).[3]
*1173 Defendant appealed his sentence to the First Circuit Court of Appeal, arguing that it was excessive both on its face and because there was no justification for the imposition of consecutive sentences. The First Circuit Court of Appeal ruled that since defendant had pled guilty pursuant to a plea agreement, La.C.Cr.P. art. 881.2(A)(2) precluded review of defendant's sentence.

LAW AND DISCUSSION
Defendant maintains that this court is not precluded from reviewing his sentence based on La.C.Cr.P. art. 881.2(A)(2) as it only covers plea agreements involving specific sentences. Additionally, defendant claims that La.C.Cr.P. art. 881.2(A)(2) does not pertain to him as he did not enter into a plea agreement. In the event this court does find defendant entered into a plea agreement that is covered under La.C.Cr.P. art. 881.2(A)(2), defendant argues this court can still determine whether defendant's sentences should run consecutively as the issue of consecutive/concurrent sentences was not discussed in the plea agreement.
La.C.Cr.P. art. 881.2(A)(2)[4], supra note 1, states as follows:
The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.
Prior to the enactment of La.C.Cr.P. art. 881.2(A)(2), this court distinguished between plea agreements involving sentencing caps, which do not provide a set sentence, but rather a specified range of sentence, and plea agreements involving a specific (set number of years) sentence. Before the enactment of La.C.Cr.P. art. 881.2(A)(2), this court held in State v. Smack[5], 425 So.2d 737 (La.1983) that a defendant who plead guilty with the understanding he would not be sentenced beyond a specified range (sentencing cap) could still seek appellate review of that sentence. However, a defendant who pled guilty with the understanding he would receive a specific (set number of years) sentence could not seek appellate review of his sentence.[6]
The Legislature did not provide a definition of "plea agreement" in La.C.Cr.P. art. 881.2(A)(2). Thus, the issue is whether the term "plea agreement" encompasses a plea agreement whereby the defendant agrees to plead guilty in order to be sentenced under an agreed upon sentencing cap. According to the First,[7] Second,[8] and Third[9] Circuit Courts of Appeal, La.C.Cr.P. art. 881.2(A)(2) does apply to plea agreements involving both sentencing caps and specific sentences. However, the Fifth Circuit Court of Appeal held in State v. Boros, 94-453 (La.App. 5th Cir. 11/29/94), 646 So.2d 1183, writ denied, 94-3148 (La.5/12/95), 654 So.2d 347 that La. C.Cr.P. art. 881.2(A)(2) does not preclude *1174 review of a plea agreement whereby a defendant pled guilty under a sentencing cap. Boros cites State v. Smack, 425 So.2d 737 (La. 1983) as authority for its holding.
The Legislature passed La.C.Cr.P. art. 881.2(A)(2) in 1991 (after Smack) to help implement the Louisiana Sentencing Guidelines. Although the Guidelines have been repealed, they still provide evidence of the legislative intent behind the passage of La. C.Cr.P. art. 881.2(A)(2). La.S.G. § 301(A) and (B) anticipated a plea agreement in which the defendant could plead guilty in exchange for imposition of a sentence within a grid cell[10] or for a specific sentence. Comment (3) to La.S.G. § 301 explained "[t]he defendant cannot appeal from a sentence imposed in conformity with a plea agreement set forth in the record. See LSA-C.Cr.P. art. 881.2(A)(2)." This comment shows the legislature clearly intended for 881.2(A)(2) to preclude review of all plea bargains that are set forth in the record. Further support of this legislative intent is found in the Introduction to the Louisiana Sentencing Guidelines Manual, 1994 Edition at p. 11 which states:
[N]o further justification is required under the Guidelines if a guilty plea agreement is reached by the parties and submitted to the court with a recommendation regarding a particular sentence or a range or "cap." The Guidelines and the 1991 implementing legislation adopt the view that a sentence in a particular case, which is acceptable to the prosecutor, defense counsel, and the trial court, should not be subjected to scrutiny by a reviewing court.
Based upon the evidence presented above, it is clear the legislature intended La.C.Cr.P. art. 881.2(A)(2) to apply to plea agreements involving both specific sentences and sentencing caps.
Defendant maintains the meaning of a plea agreement under La.C.Cr.P. art. 881.2(A)(2) is not relevant to his case as he did not enter into any type of plea agreement. According to the defendant, he did not intend to give up his right to challenge his sentence on the distribution of cocaine charge just because the trial judge had agreed not to sentence him to more than thirty years.
The defendant in this case was facing a possible term of imprisonment that exceeded the thirty year sentencing cap that was agreed upon when the defendant pled guilty to the cocaine charge. The following exchange between the trial judge, defense counsel, and the district attorney demonstrates that a plea agreement was entered into before the defendant pled guilty to the distribution of cocaine charge:
Defense Counsel: Your Honor, Can I make one comment on the question of whether anything has been promised? In connection with thisthe way we're handling this entire proceeding, the court has given us assurance that the sentence would not be over thirty years.
Trial Judge: That's true. I did cap the whole thing in that all these charges, regardless of what the verdicts may be, that you would not receive over thirty years.
Defense Counsel: And also, your honor, thethere's a simple burglary that's been billed that I understand will be dropped, along with any other charges that are embodied within these bills that are not part of this plea or part of the stipulation.
Trial Judge: All right, you're dismissing Bill 416?
District Attorney: Yes Sir. That's 6-91-416will be dismissed pursuant to this plea, Your Honor.
The United States Supreme Court in Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) commented that pleas are mutually advantageous to both defendants and prosecutors and pleas are often induced by promises of reduction of charges and by fear of the possibility of a greater penalty upon conviction after a trial. In light of the fact the defendant faced a possible prison term that exceeded thirty years, he made a voluntary and intelligent decision with the assistance of counsel to *1175 plead guilty to the cocaine charge in return for the assurance that he would not receive more than thirty years for distribution of cocaine, aggravated battery and two counts of possession of a firearm by a convicted felon. Essentially, the defendant's guilty plea assured him that the simple burglary charge pending against him would be dropped and that he would not receive more than thirty years imprisonment on the distribution of cocaine charge and the charges he was going to be tried on. The distribution of cocaine charge alone carried a possible maximum penalty of thirty years. The record clearly shows that defendant entered into a plea agreement.
Ultimately, the trial judge sentenced defendant to serve two consecutive prison terms, fifteen years imprisonment on the cocaine charge, and five years imprisonment on the aggravated battery charge. The issue of concurrent/consecutive sentences was not discussed before the defendant entered his guilty plea in exchange for the sentencing cap. Therefore, according to the defendant, this court is not precluded by La.C.Cr.P. art. 881.2(A)(2) from reviewing whether defendant's prison terms should run consecutively. Defendant argues the two offenses (distribution of cocaine and aggravated battery) were separate and distinct. Thus, according to the defendant, the trial court erred in imposing a consecutive, as opposed to a concurrent, sentence.
Defendant voluntarily and with the assistance of counsel decided to enter into a plea agreement so he would not be subjected to a term of imprisonment longer than a total of thirty years for all of the charges against him. Defendant was sentenced within the agreed upon range. In fact, defendant was sentenced to a term of imprisonment which was less than the sentencing cap he pled guilty under. Therefore, we find La.C.Cr.P. art. 881.2(A)(2) precludes defendant from appealing his sentence imposed in conformity with a plea agreement which was set forth in the record at the time of his plea. Thus, defendant's conviction and sentence are affirmed.

DECREE
AFFIRMED.
LEMMON, J., concurs.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting.
There is nothing in the language of La. C.Cr.P. art. 881.2(A)(2) that precludes an appeal of a sentence entered by a trial court after agreeing to a sentencing cap. In this case, the trial court did not agree to impose a specific sentence, but rather only agreed to exercise his discretion within a certain sentencing range. Where there is an exercise of discretion, there is a potential for abuse of that discretion, and that abuse must be subject to appellate review. In State v. Smack, 425 So.2d 737 (La.1983), we acknowledged that a defendant sentenced under an agreed upon sentencing cap had the right to appeal that sentence. La.C.Cr.P. art. 881.2(A)(2) did not overrule Smack.
Accordingly, I respectfully dissent.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] La.C.Cr.P. art. 881.2(A)(2) enacted by 1991 Acts No. 30, § 1, effective January 1, 1992 states: "[t]he defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea."
[2] After the incident, Shelton was treated at a hospital where he received ten sutures for his wounds. At trial, the state introduced photographs into evidence depicting the three areas where lacerations were inflicted upon Shelton's head by defendant during the struggle. (State Exhibit S-3).
[3] On the basis of error patent, the appellate court vacated the multiple offender adjudication and the sentence for cocaine distribution and remanded the case for further proceedings. See State v. Young, 623 So.2d 47 (La.App. 1st Cir.), writ denied, 626 So.2d 1179 (La.1993). On remand, the trial court denied the defendant's motion to quash the habitual offender bill and the defendant stipulated to his status as a second felony habitual offender. The trial judge then readjudicated the defendant a second felony offender and reimposed the sentence of fifteen years at hard labor.
[4] 1991 Acts No. 38, § 1 which enacted La. C.Cr.P. art. 881.2(A)(2) became effective on January 1, 1992. It is applicable to all sentences pronounced on or after January 1, 1992. Defendant pled guilty on May 14, 1992 and was sentenced on July 31, 1992.
[5] See also State v. Pearson, 425 So.2d 704 (La. 1982) (stating this court will consider excessiveness of plea agreements whereby a sentencing cap is agreed upon); State v. Bell, 412 So.2d 1335 (La.1982) (same).
[6] In State v. Jett, 419 So.2d 844 (La.1982) this court reviewed a sentence for excessiveness that had been imposed under a plea bargain whereby a specific sentence had been agreed upon. Jett was not followed in subsequent cases. See Pearson, 425 So.2d 704; Smack, 425 So.2d 737.
[7] State v. Lewis, 633 So.2d 318 (La.App. 1st Cir. 1993).
[8] State v. Brooks, 614 So.2d 788 (La.App. 2d Cir.), writ denied, 619 So.2d 577 (La.1993); State v. Hawkins, 615 So.2d 1367 (La.App. 2d Cir.), writ denied, 624 So.2d 1223 (La.1993); State v. Smith, 622 So.2d 1199 (La.App. 2d Cir. 1993) (per curiam); State v. Hodge, 25,574 (La.App.2d Cir. 2/23/94), 632 So.2d 903; State v. Rice, 26,478 (La.App.2d Cir. 12/7/94), 648 So.2d 426, writ denied, 95-0431 (La.6/16/95), 655 So.2d 340.
[9] State v. Laroux, 93-719 (La.App. 3d Cir. 2/2/94), 631 So.2d 730, writ denied, 94-0577 (La.6/3/94), 637 So.2d 498 (stating absent compelling circumstances, a defendant who agrees to be sentenced within the limits of a cap cannot appeal his sentence as excessive); State v. Countee, 94-1569 (La.App. 3d Cir. 5/31/95), 657 So.2d 374, writ denied, 95-2501 (La.2/2/96), 666 So.2d 1086.
[10] A grid cell is a range of possible sentences that may be imposed based upon the seriousness of the offense, criminal history of the defendant and aggravating and mitigating circumstances. See Introduction to the Louisiana Sentencing Guidelines Manual, 1994 Edition at p. 5.