liWO OP ARP, Judge.
Oscar Ray Underwood, the defendant, alleges that his fifteen-year sentence at hard labor for committing aggravated burglary is excessive. For the following reasons, we set aside the sentence and remand for resentenc-ing.
FACTS
On January 7, 1997, the defendant entered the residence of Gertrude Cornish without authorization. Attempting to force her to resume a “relationship” with him, he held a butter knife to the stomach of her eight-year-old son. He then took the keys to her car after threatening her.
On February 27, 1997, he was charged by bill of information with one count of unauthorized use of a movable, one count of unauthorized entry of an inhabited dwelling, and one count of second degree kidnaping. On that date, he entered a plea of not guilty to the charges. An amended bill of information was filed, containing the additional charge of aggravated burglary. That same date, he withdrew his not guilty plea and entered a plea of guilty to the charge of aggravated burglary. The remaining ^charges were dismissed. He was sentenced to serve fifteen years at hard labor. He now appeals this sentence alleging it was excessive.
LAW
ERRORS Patent
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent. The minutes of sentencing incorrectly state that the defendant was sentenced to three years at hard labor, when the defendant was sentenced to serve fifteen years at hard labor. Thus, we instruct the court below to *860 correct the minutes to reflect the correct sentence.
The Sentence
In addition to complaining that the sentence was excessive, the defendant contends that the trial court failed to articulate sufficient reasons to justify the sentence, particularly in light of certain mitigating factors, specifically, his alleged mental illness.
The state agreed to dismiss all the remaining charges against him in exchange for his guilty plea to the charge of aggravated burglary. La.Code Crim.P. art. 881.2(A)(2) provides: “The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.” The defendant acknowledges awareness of the supreme court’s holding in State v. Young, 96-0195 (La.10/15/96); 680 So.2d 1171. In that case, the court found that “the legislature intended La.C.Cr.P. art. 881.2(A)(2) to apply to plea agreements involving both specific sentences and sentencing caps.” Id. at 1174. However, the defendant claims that Young is not applicable to the present ease since the parties did not actually agree upon a specific sentence or a sentencing cap, and, citing State v. Planco, 96-812 (La.App. 3 Cir. 3/26/97); 692 So.2d 666, he notes that we have held that a defendant has the right to seek review of a sentence imposed even pursuant to a sentencing cap when he reserves his right to appeal the sentence as excessive. Finally, he argues even if this court finds that Young is applicable, since other counts in the bill were dismissed, this court should, nevertheless, review the sentence because he was not advised that he was waiving his right to appeal.
bln opposition, the state points out that the defendant did not reseñe his right to seek review of his sentence for excessiveness. There is no authority, jurisprudentially or otherwise, for requiring the trial court to inform a defendant, who is sentenced on a reduced charge pursuant to a plea agreement, that he, thereby, waives his right to attack the sentence imposed on appeal for excessiveness.
In State v. Jordan, 98-101 (La.App. 3 Cir. 6/3/98), 716 So.2d 36, this court addressed the applicability of Article 881.2(A)(2) to a situation factually similar to the present case. In Jordan, the defendant was originally charged with three offenses — molestation of a juvenile, aggravated oral sexual battery, and aggravated crime against nature. The aggravated crime against nature charge was reduced to indecent behavior with a juvenile. The defendant entered a plea of guilty to the charge of indecent behavior with a juvenile and the remaining charges were dismissed. The defendant was sentenced to seven years at hard labor, the maximum sentence for indecent behavior with a juvenile. Addressing whether or not Article 881.2(A)(2) precluded review of the defendant’s sentence, we stated:
In view of this reduction of the charges, the one remaining charge may be seen to operate as a sentencing cap as it reduced the defendant’s exposure from a total possible sentence of fifty years to a possible sentence of seven years, the statutory maximum for the charge to which he pled guilty. Even further, the parties jointly agreed that the State would recommend that the defendant be sentenced to three years. This portion of the agreement was clearly fulfilled as the defendant pled guilty to a reduced charge, the State made its recommendation, and the remaining charges were dismissed. Thus, each of the parties complied with the plea agreement. However, the court did not accept the recommended sentence, as was done in the above-cited cases, but, rather, sentenced the defendant to the statutory maximum of seven years at hard labor for a conviction under La.R.S. 14:81. Therefore, under existing jurisprudence it is unclear whether Article 881.2 applies.
(Footnote omitted.) Id. at 38.
The court in Jordan stated: “In an instance where the court sentences the defendant in accordance with the parties’ recommendation for a specific sentence or a sentencing range, it is clear that review of the imposed sentence is precluded. See (citing) State v. Watkins, 97-364 (La.App. 3 Cir. 10/8/97); 700 So.2d 1172; State v. Lar- *861 oux, 93-719 (La.App. 3 Cir. 2/2/94); 631 So.2d 730, writ denied, 94-0577 (La.6/3/94); 637 So.2d 498; State v. Lewis, 633 So.2d 315 (La.App. 1 Cir.1993).” Jordan, 716 So.2d at 38. However, the present ease is distinguishable from the cases cited in Jordan. The defendant, in this case, entered his plea to the reduced offense without extracting any promise from the state that it would recommend imposition of a specific sentence or sentencing cap.
Further addressing the possible application of article 881.2(A)(2), we said in Jordan:
A sentence imposed in conformity with the plea agreement would, as previously stated, preclude review on appeal. However, if we were to determine that the defendant was not sentenced in conformity with the plea agreement, it follows that review would be permissible under Article 881.2(A)(2), but such a sentence would be illegal and, thus, would be vacated. A vacated sentence, obviously, could not be reviewed for excessiveness.
Our review of the relevant jurisprudence does not indicate that this exact issue has been addressed by a court of this state. However, in State v. Goodman, 96-376 (La.App. 3 Cir. 11/6/96); 684 So.2d 58, a panel of this court concluded that Article 881.2(A)(2) applied only in circumstances where a specific sentence or a specific sentencing range was agreed upon and not where a defendant merely pled guilty to a reduced offense. This court reasoned as follows:
The “cap” discussed at sentencing was a clarification of the law for Goodman’s benefit, not a reference to a specific term deemed part of the plea agreement. Nevertheless, the state contends that “any agreement regarding pleading either for a specific sentence or to an amended charge is a plea agreement.” Notwithstanding the veracity of that statement, the state ignores the clear purpose of the statute. A fair reading of the statute indicates that the limitation applies when a specific sentence or sentencing range is agreed to by both parties as part of a plea agreement, and is judicially recognized at the sentencing hearing. Read in this manner, the statute prevents a defendant from appealing a specific sentence to which he had previously agreed in order to receive a lesser conviction. In other words, the statute conserves judicial resources by not allowing a defendant to change his mind about the agreement after sentence is imposed. If one reads the statute in the manner suggested by the state, any defendant who pleads to a lesser charge for whatever reason would not be allowed to seek review of an imposed sentence on appeal.
The reasoning of Goodman would appear to safeguard the defendant’s right to review in an instance where, as here, the defendant was sentenced fcwithin the statutory limits, but to a term which exceeded the recommended sentence for which the parties bargained.
Id., 716 So.2d at 39 (citations omitted) (emphasis in original). Goodman, likewise, appears to safeguard defendant’s right to review in this case because no agreement as to a specific sentence or sentencing cap was entered as part of the plea agreement. For reasons articulated in Goodman, Jordan, and in the interest of justice, we will review the defendant’s sentence for excessiveness.
The defendant was sentenced to serve fifteen years at hard labor. The sentencing range for aggravated burglary is one to thirty years at hard labor. When sentencing him, the trial court stated the following:
THE COURT: Oscar Underwood. Mr. Underwood has provided to me a letter which I’ll file into the record at this time which I read in connection with this matter prior to sentencing. The Court ordered a presentence investigation report which it has reviewed following his plea of guilty to the offense of aggravated burglary. Originally, the defendant was arrested and charged with the offenses of aggravated burglary, stalking, simple battery, unauthorized entry of an inhabited dwelling, unauthorized use of a movable and subsequently charged with second degree kidnaping. All nut [sic] the charge of aggravated burglary were dismissed in connection with this plea of guilty. Even ac *862 cording to the defendant’s statement, he admits the underlying facts which were an integral part of this offense and that he entered the residence of Gertrude Cornish and held her young son Anthony Cornish at bay with a butter knife in an attempt to coerce Ms. Cornish to come back to him in their relationship which she did not do. And according to the defendant,
“I went to the kitchen, got the butter knife and put it to her son. We broke up and I wanted her back, told her to come with me but she ran out of the house. Followed her to the front door then her little boy ran out. When she would not come back, I got the keys and took her car.”
[[Image here]]
THE COURT: ... I’m going to detail for the record that this defendant is classified as a first felony offender. He has no indicated juvenile record but his adult record consists of a 1995 charge of misdemeanor theft for which he was given credit for time served, four days in jail; resisting an officer and simple escape, which were dismissed; unauthorized use of a movable; simple battery; entry after being forbidden, dismissed; unauthorized entry of an inhabited dwelling; false imprisonment, dismissed; aggravated kidnaping, dismissed; simple criminal damage to property, March 27, 1997, pled guilty, six months parish jail, all but 30 days suspended, six months unsupervised probation. fcHe was ultimately arrested while he was out on bond in this matter for obstruction of court orders, that is that he was ordered not to have any contact with the victim in this ease and continued to do so which resulted in him being incarcerated prior to sentencing today.
Shows the defendant completed the eleventh grade. He’s had no additional education or vocational training. Has maintained very sporadic employment. Eight months in 1996 at Country Boy Foods; four and a half months at Sam’s Restaurant; seven months at Hardee’s Restaurant. 26 years old. Because of the nature of this offense, he is ineligible for any type of probated sentence. He also is ineligible for participation in impact programs since this is considered and is a crime of violence.
[[Image here]]
In this case, I find that the presentenee investigation gives adequate proof that this defendant is an undue risk for a suspended 'or probation due to the fact that during any such period he would commit another offense, particularly, and most likely, against the victim in this case. The seriousness of his offense and the tremendous advantage that he gained by the plea bargain in this case and the fact that his is a crime of violence shows that this defendant is in need of correctional treatment or a custodial environment which most effectively can be provided by his commitment to an institution of the State of Louisiana and any lesser sentence than the one imposed herein would negate the seriousness of the offense that this defendant has committed, not only against the victim, the mother, but against this young boy who is, according to the presentence investigation report, is still having a very difficult time in dealing with this situation.
The defendant argues that the sentence he received is excessive because of his status as a first felony offender, his young age, and his alleged mental illness. He complains that the trial court erred in failing to consider his mental illness when imposing sentence. Following the appointment of a sanity commission to evaluate the defendant, Dr. Joe Hayes, a psychiatrist, submitted a letter to the court. The letter stated in pertinent part:
He states he had been hearing voices telling him to kill himself and that he has had a mental illness since 1989.
[[Image here]]
His mental status reveals mainly the positive signs of paranoia and his history of hearing voices. He does have suicidal thinking, especially since he was diagnosed as diabetic. He says he has some thoughts about that almost everyday.
frMy psychiatric diagnosis is Major depression with Psychotic Symptoms, Passive Dependant Personality Traits and medical illness of Diabetes Melitose.
*863 It is clear this man knows right from wrong and understands the charges against him and their consequences. I think, although he has a little difficulty with communication because of his mental illness, he is capable of assisting in a meaningful manner in his defense with counsel. Therefore, it is my opinion that he is competent to proceed. Concerning his sanity at the time of the alleged event, it is obvious that he knows what happened and what took place but he has a different view of what occurred than does the accuser. He may well have been drinking and experiencing auditory hallucinations that might have confused his memory to some degree and perhaps even be mitigation for poor judgment. However, I do believe that he was sane at the time of the event.
(Emphasis added.)
In support of his argument that the trial court erred in failing to weigh his mental illness as a mitigating factor, the defendant cites State v. Price, 403 So.2d 660 (La.1981). In that case, the court found that the trial court erred when it failed to consider several mitigating factors set forth in La.Code Crim.P. art. 894.1 — factors which, according to the supreme court, were highly relevant. The court noted:
Thus, although defendant failed to establish the defense of insanity, it could not be denied that proof was given that he suffered from a deranged mental condition; in fact, the court appointed sanity commission had initially found that defendant was not even capable of standing trial. It was not until after defendant responded to medical treatment that the trial took place. While defendant did not prove that he was legally insane when he committed the crime, there was certainly proof that he committed the offense under the influence of an abnormal mental state. This does not absolve defendant of criminal responsibility for his actions, but it does tend to excuse or explain his behavior.
[[Image here]]
We do not conclude, from the record before us, that the thirty year sentence was in fact excessive or grossly out of proportion to the severity of the crime. But where, as here, the trial judge ostensibly ignored or discounted several important mitigating considerations without providing any reasons for doing so, and the sentence imposed is relatively harsh considering the circumstances of the offender’s mental state, it is preferable to require a reexamination of the sentence.
Price, 403 So.2d. at 664-65 (citation omitted).
In State v. Soraparu, 97-1027 (La.10/13/97); 703 So.2d 608, the Louisiana Supreme Court stated:
In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, a remand for resentencing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.”
(Citations omitted.) Although the trial court in this case considered extensive aggravating factors, he also considered the fact that the defendant is classified as a first felony offender with no juvenile record. We find that the court, additionally, should have considered the defendant’s mental condition; namely, his “positive signs of paranoia”and his “experiencing auditory hallucinations” “at the time of the alleged event,” for which the court-appointed psychiatrist stated could be “mitigation for poor judgment.” This psychiatrist also diagnosed him as having “psychotic symptoms” which signifies a “fundamental lasting derangement characterized by defective or lost contact with reality, syn see insanity.” Webstee’s Seventh New Collegiate Dictionary 689 (1965). This is evidence of substantial mental illness which must be considered by the trial court during sentencing.
CONCLUSION
For the foregoing reasons, the defendant’s sentence is set aside. The ease is remanded for resentencing. The trial court is instructed to consider his mental illness at the time of the offense. The trial court is also instructed to correct the minutes of sentencing to reflect the proper sentence.
*864 REMANDED FOR RESENTENCING WITH INSTRUCTIONS.
COOKS, J., dissents and assigns written reasons.