Judgment rendered May 10, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,954-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

WILLIAM H. JOHNSON                          Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. F-2020-96

Honorable John Clay Hamilton, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Annette Roach

WILLIAM H. JOHNSON                          Pro Se

PENNY DOUCIERE                          Counsel for Appellee
District Attorney

DOUGLAS WHEELER
AMANDA M. WILKINS
Assistant District Attorneys

* * * * *

Before STEPHENS, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

William Johnson appeals his sentence of 20 years at hard labor following a guilty plea to one count of aggravated second degree battery, La. R.S. 14:34.7, and one count of home invasion, La. R.S. 14:62.8. For the reasons expressed, we affirm.

## FACTS

Early in the morning on February 26, 2020, Alexis Johnson ("Alexis") called the Rayville Police Department ("RPD") complaining her ex-husband, William Johnson, was in her yard causing a disturbance. Officers from the RPD were dispatched to Alexis's home but, by the time they arrived, Johnson had already fled. The officers waited at Alexis's home for a while to see if Johnson would return, and eventually left when he did not come back.

Not long thereafter, Johnson returned to Alexis's house, kicked in her front door, and stated he was going to kill everyone in the home, which included Alexis's children and her live-in boyfriend, Franchester Griffin. Johnson then drew a knife and attempted to stab Alexis; however, he narrowly missed and cut only her shirt. As Johnson was making a second stab attempt, Griffin put his hand in front of Alexis resulting in a cut to his hand and a slash on his back. Griffin then fled to the bedroom where he barricaded himself, but Johnson persisted and attempted to break through the door. Griffin decided to make a run for it but was caught by Johnson and cut several times before he was eventually able to escape to the neighbor's house. With Griffin gone, Johnson turned his attention to Alexis. She

stated Johnson dragged her down the hallway by her hair before her oldest son armed himself with a knife and attempted to intervene. As a result, Johnson fled the house ending the rampage.

Alexis once again called the RPD to report what had transpired and the investigation was turned over to the Richland Parish Sheriff's Office ("RPSO") because of a conflict of interest involving the RPD. An investigator with the RPSO took a statement from Alexis which detailed the events discussed above. A warrant was also obtained for Johnson's arrest.

Three days after this incident, on March 1, 2020, Alexis reported to the RPSO that Johnson, who had not yet been located, was calling and threatening her over the phone. While being interviewed by the RPSO regarding the threats, Alexis received another call from Johnson and placed it on speakerphone so the officer interviewing her could hear the conversation. During the course of the phone call, the officer overheard Johnson threaten to kill Alexis twice. The RPSO then attempted to track the phone number, but they were unable to locate Johnson.

Sometime after this incident, the Ouachita Parish Sheriff's Office ("OPSO") notified the RPSO they had received a tip Johnson was hiding at a specific location in Monroe.[1] By the time the RPSO arrived at the scene, OPSO had already found Johnson hiding under a mobile home and he was subsequently arrested.

On May 14, 2020, Johnson was charged by bill of information with two counts of attempted first degree murder, La. R.S. 14:30 and 27, and one count of home invasion, La. R.S. 14:62.8. The bill was amended twice to

_____

[1] The record does not provide how much time passed between the phone conversation and the tip from OPSO; however, Johnson was arrested on March 2, 2020.

2

correct the dates of the offenses and to reduce the charges from attempted

first degree murder to attempted second degree murder, La R.S. 14:30.1 and

27. The charge of home invasion was not amended.

Jury trial began on November 2, 2021. After the jury was selected

and sworn, the state moved to amend the bill of information again in order to

remove certain language which described the attempted second degree

murder charges. Johnson objected and, following a hearing on the motion,

the trial court found no prejudice would occur as a result of the amendment.

The next day, before trial commenced, Johnson entered a plea

agreement whereby he was allowed to plead guilty to an amended charge of

aggravated second degree battery of Griffin, La. R.S. 14:34.7, and the

second count of attempted murder involving Alexis was dismissed. Johnson

also pled guilty to the home invasion charge. The agreement limited

Johnson's total exposure on both charges to a maximum of 20 years at labor

and stipulated that each sentence would run concurrently.

A *Boykin* examination was then conducted where Johnson freely,

voluntarily, and intelligently waived his constitutional rights. Following the

examination, the trial court advised Johnson of the repercussions of his

pleading guilty to the agreed-upon charges. Next, the trial court informed

Johnson he could not appeal his guilty plea because it was part of a plea

agreement, but he could appeal his sentence.[2] The trial court then noted

there was a sufficient factual basis for the charges, and that Johnson was

entering into the plea freely with an understanding of the nature of the

charge and the consequences of his plea. Johnson's pleas of guilty to

_____

[2] As is discussed in more detail later in this opinion, a sentence imposed following a plea agreement with a sentencing cap is not appealable.

3

aggravated second degree battery and home invasion were then accepted by the trial court.

Johnson appeared for sentencing on March 9, 2022. Prior to issuing its sentence, the trial court stated it had reviewed the presentence investigation ("PSI") report, which included the factual basis for Johnson's charges as well as information relating to Johnson's background. The trial court specifically noted this was Johnson's third felony conviction, then detailed some mitigating factors included in the PSI: Johnson's showing remorse, his concern for his children, and his gainful employment prior to the offense. The trial court stated it had considered all of these factors in light of the sentencing guidelines of La. C. Cr. P. art. 894.1.

Next, the trial court addressed several conclusions it had reached regarding Johnson's case. First, the trial court stated Johnson's actions were unprovoked, vicious, and brutal. Further, they were performed with a dangerous weapon which ultimately caused serious harm to the victim, Griffin. The trial court also referenced Johnson's lengthy criminal history, which included many past arrests as well as several periods of incarceration, probation, and parole. The trial court believed Johnson was likely to commit another crime in the future. Additionally, the trial court found a period of incarceration would not subject Johnson to any undue hardship, and there was a risk that during a period of suspended sentence or probation Johnson would commit another crime. Following these findings, the trial court sentenced Johnson to serve 15 years at hard labor on the amended charge of aggravated second degree battery and 20 years at hard labor on the charge of home invasion. Pursuant to the plea agreement, the sentences were ordered to run concurrently.

Johnson filed a pro se motion to appeal and was referred to the Louisiana Appellate Project. His appointed counsel then filed an *Anders* brief and a motion to withdraw as attorney of record. This court issued an order holding the motion to withdraw in abeyance and issued a pro se briefing deadline, but Johnson has never filed a brief with this court.

**DISCUSSION**

In support of her motion to withdraw, Johnson's appellate counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), alleging she made a thorough review of the record and could not find any nonfrivolous issues to raise on appeal, thus she should be allowed to withdraw. The brief outlines the facts and procedural history of the case and includes a detailed analysis of any possible issues and whether they are worth pursuing on appeal, including: (1) Johnson's representation by counsel throughout the proceedings, (2) the *Boykin* examination, (3) the plea agreement, (4) the bill of information and subsequent amendments of the bill, (5) the trial transcript, and (6) Johnson's sentence. After a thorough analysis of each of these issues, Johnson's counsel submits she found no errors that warrant setting aside Johnson's guilty plea or sentence. She maintains she should be allowed to withdraw pursuant to *Anders*, *supra*, and *State v. Benjamin,* 573 So. 2d 528 (La. App. 4 Cir. 1990). Johnson did not respond to the motion to withdraw nor has he filed a brief addressing any of the issues.

The state also submitted a brief agreeing that Johnson's counsel should be permitted to withdraw because no errors have been raised by Johnson or his counsel. Further, the state asserts Johnson's conviction and

sentence should be affirmed because all procedures regarding Johnson's charges, plea agreement, and sentencing were properly conducted.

After an independent review of the record, we find the brief submitted by Johnson's counsel satisfies the requirements found in *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So. 2d 241, and thoroughly examines the facts and procedural history of the case while providing an adequate assessment of whether there are any nonfrivolous issues. In the brief, Johnson's counsel asserts Johnson is precluded from appealing his sentence because it was imposed as part of a plea agreement which included an agreed-upon sentencing cap. We agree with this assertion.

The crime of aggravated second degree battery carries a maximum sentence of 15 years at hard labor, La. R.S. 14:34.7(C), while the crime of home invasion carries a maximum sentence of 30 years at hard labor. La. R.S. 14:62.8(B). Thus, with Johnson's plea of guilty to both aggravated second degree battery and home invasion, he was facing a maximum total of exposure of 45 years at hard labor. Johnson was ultimately sentenced to only 20 years at hard labor, within his agreed-upon sentencing cap.

In *State v. Young*, 96-0195 (La. 10/15/96), 680 So. 2d 1171, the Louisiana Supreme Court found La. C. Cr. P. art. 881.2(A)(2) precludes a defendant from appealing a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of his plea. Here, the record reflects Johnson, faced with two counts of attempted second degree murder and one count of home invasion, accepted a plea agreement which reduced his total charges to only one count of aggravated second degree battery and one count of home invasion. The record further supports the plea agreement included a total sentencing cap of 20 years at hard labor.

6

Johnson ultimately pled guilty to these reduced charges and was sentenced within the bounds of the agreed-upon sentencing cap. Thus, pursuant to *Young*, *supra*, Johnson is barred from appealing his 20-year sentence, which was imposed in conformity with a plea agreement set forth in the record at the time of the plea. While the trial court did have discretion to sentence Johnson to a term of incarceration particularized for him within the sentencing cap, the sentence is not appealable if it is within the cap.

Because Johnson is barred from appealing his conviction and sentence, we are confined to reviewing this record for errors patent only. La. C. Cr. P. art. 920. Our independent review of the record revealed no nonfrivolous errors regarding Johnson's guilty plea or the statutorily valid sentence imposed in conformity with the plea agreement. The record shows Johnson was properly charged by bill of information, was present with counsel at all stages of prosecution, was properly advised of his rights, was advised of the nature of his charges and consequences of his guilty plea, and was found to fully understand the plea agreement before freely and voluntarily entering into it. Johnson was then sentenced in accordance with the plea agreement; therefore, he is precluded from appealing his conviction or sentence.

Even though Johnson is not entitled to appellate review, we find it worth addressing two issues presented by his counsel in brief. First, the record shows during the guilty plea hearing the trial court improperly advised Johnson of his rights to appeal his sentence in the following statement:

> Do you understand that since you've entered into a plea bargain agreement with the state you cannot appeal – well, in this particular case the sentencing is going to be up to me so you

7

could appeal the sentence whatever the sentence winds up being but you could not appeal the guilty plea.

The trial court also improperly advised Johnson during sentencing that he had the right to appeal his sentence.

In *State v. Wright*, 49,882 (La. App. 2 Cir. 7/8/15), 169 So. 3d 835, the defendant was first properly advised by the trial court at the guilty plea hearing he was not entitled to appeal his sentence as there was a plea agreement along with a sentencing cap; however, the defendant was later improperly advised at sentencing that a sentencing cap did not exist. This court found the trial court's contrary statements did not influence the defendant's decision to plead guilty or interfere with the enforceable cap; therefore, the defendant was not entitled to appellate review.

Here, like the defendant in *Wright*, *supra*, Johnson was improperly advised by the trial court regarding his right to appeal his sentence from a plea agreement involving an agreed-upon sentencing cap. Although this was incorrect, we likewise find it did not influence Johnson's decision to plead guilty or interfere with the sentencing cap. The record reflects Johnson was fully aware of the substantial benefit and limitation on exposure he would receive by entering into the plea. Further, he was properly *Boykinized* and fully informed of the repercussions of his plea by the trial court. Knowing this, Johnson still freely and voluntarily pled guilty to the reduced charges, and was later sentenced in accordance with his plea. Thus, we find the trial court advising Johnson he had a right to appeal the sentence did not influence his decision to plead guilty or interfere with the sentencing cap.

Johnson received a tremendous benefit by having two of his charges reduced from attempted second degree murder to only one count of

8

aggravated second degree battery. Had Johnson been convicted of two counts of attempted second degree murder, he would have been facing 50 years at hard labor without benefits for each conviction. La. R.S. 14:30.1 and 27. The facts set forth in the record arguably support convictions on the attempted murder charges. We agree with the trial court's conclusion that Johnson's actions were unprovoked, vicious, and brutal. A 20-year sentence is more than justified for Johnson and, even if it were appealable, it would have readily been affirmed.

Lastly, we turn to the bill of information and its subsequent amendments. The original bill of information, filed on May 14, 2020, charged Johnson with two counts of attempted first degree murder and one count of home invasion. This document now bears several handwritten changes. First, the date on which the offenses occurred, March 2, was stricken from each charge and "February 26" was written above each and initialed by the Assistant District Attorney ("ADA"), but the date on which the changes were made was not provided.[3] The second handwritten change struck through the words "first" and replaced them with "second" in the attempted murder charges. This change was initialed and dated by the ADA on October 29, 2021. Lastly, certain language describing both attempted murder charges was stricken entirely, over Johnson's objection, a change made during trial and dated by the ADA on November 3, 2021. The record also contains an amended bill of information filed October 29, 2021. This amended bill reflects all the handwritten changes made to the original bill, charges Johnson with two counts of attempted second degree murder and

_____

[3] According to the brief of Johnson's counsel, this first handwritten change occurred on October 25, 2021.

one count of home invasion, omits certain language describing the two attempted murder charges, and gives the date of each offense as February, 26, 2020.

Although these many amendments may have led to some confusion, we find they do not constitute reversible error. The district attorney has full authority to amend bills of information, both as to form and substance, any time before trial. When the bill provides sufficient notice of the crime, a defendant suffers no prejudice. *State v. Frost*, 53,312 (La. App. 2 Cir. 3/4/20), 293 So. 3d 708, *writ denied*, 20-00628 (La. 11/18/20), 304 So. 3d 416. Nothing in this record suggests that these amendments deprived Johnson of adequate notice; in fact, they steadily lessened the gravity of the offenses. We perceive no error.

## CONCLUSION

Because Johnson's appellate counsel has filed an *Anders* brief in compliance with *Jyles*, *supra*, and we have found no errors patent, the motion to withdraw is granted, and Johnson's conviction and sentence are affirmed.

**MOTION TO WITHDRAW GRANTED; CONVICTION AND SENTENCE AFFIRMED.**

10