990 So.2d 130 (2008)
STATE of Louisiana, Appellee
v.
Shannon STROTHER, Appellant.
No. 43,363-KA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2008.
Rehearing Denied September 11, 2008.
*132 Snell & Robinson, by A. Richard Snell, Bossier City, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, C. Sherburne Sentell, III, Assistant District Attorneys, for Appellee.
*133 Before BROWN, STEWART and GASKINS, JJ.
STEWART, J.
The defendant, Shannon Strother, was convicted of two counts of molestation of a juvenile, a violation of La. R.S. 14:81.2. The trial court subsequently sentenced the defendant to serve 12 years' imprisonment at hard labor, with all but three years' suspended, and with credit for time served. The defendant was also ordered to serve five years supervised probation after his release and to pay a fine in the amount of $3,000.00. He now appeals, urging six assignments of error. For the reasons that follow, we affirm the defendant's conviction and sentence.

FACTS
On September 2, 2006, the defendant's son, M.S.,[1] held a party at the defendant's house to celebrate the upcoming 18th birthday of M.S.'s girlfriend, W.S. M.S. invited several of his friends to the party, and approximately 10 teenagers gathered at the defendant's home that evening. The defendant was the only adult authoritative figure present at the home during the party. Two teenagers came to the party as guests of others; a 14-year-old female, J.S., was one of these uninvited guests. J.S.'s mother was not aware that J.S. was attending the party.
J.S. testified that the defendant was cooking food and serving alcoholic drinks made from Tequila and Bacardi at the party. J.S. stated that she remembered the defendant giving her three of these beverages to drink during the course of the evening. According to J.S., she played "quarters" with the defendant and several of the other guests, and during this time the defendant put his arm around her and said "that [J.S.] was going to be his girlfriend for the night."
J.S. said she thought little of this remark at the time it was made. She subsequently went swimming in the pool at the defendant's home. J.S. swam in a sports bra and a pair of shorts that she borrowed from W.S. W.S. testified that J.S. had to borrow shorts for swimming because J.S. was not wearing panties beneath her jeans. J.S. contradicted W.S.'s testimony by stating that she wore pink panties. The defendant was present at the pool most of the time when the guests were swimming. J.S. said that as she returned inside the house after her swim, the defendant kissed her on the neck. She explained that this "freaked [her] out."
J.S. related that she had consumed a large quantity of alcohol by this point and began to throw up in the toilet. J.S.'s friend, AM, testified that J.S. proceeded to enter into one of the smaller bedrooms to lie down. Some of the partygoers looked after J.S., who lay on the bed in one of the smaller bedrooms. Eventually one partygoer, M.S.'s friend SBB, moved the "passed-out" J.S. from that bed and put her on the couch.
M.S. testified that his father's only rule was that no one could leave this party if they had been drinking unless they were driven by someone who had not been drinking. Seven of the ten youths spent the night at the defendant's house. J.S. slept in the bed located in the master bedroom. M.S. expressed that someone, other than the defendant, put J.S. in the bed in the master bedroom. The defendant's ex-wife, Julie Strother, contradicted M.S.'s testimony by stating that she heard the defendant tell a third person that he (the defendant) had put J.S. in his bed to keep her from wandering around the *134 front yard. Later that night or early the next morning, the defendant joined J.S. in his bed in the master bedroom.
J.S. stated that the next thing she remembered was "waking up and [the defendant] was on top of me." J.S. explained that she was in the home's master bedroom in the bed and that the defendant was having sex with her. She stated that the act was painful, and she recalled that after the defendant was finished, he took a cloth and wiped off her stomach and face.
Sometime during the night, J.S.'s friend, AM, testified that she came into the master bedroom, searching for J.S. AM said that when she entered into the dark room, she asked the defendant, "Where's [J.S.]?" The startled defendant replied, "Right here."
The next morning, J.S. was awakened by W.S. Both J.S. and W.S. testified that J.S. was still in bed with the defendant. J.S. testified that the defendant was not wearing a shirt, and that she was wearing a shirt but was naked from the waist down. J.S. also explained that she found "white stuff" on the inside of her shirt. She claimed to have seen semen previously, and over the defendant's objection, she testified that she recognized the substance to be semen. She got out of bed and put on her blue jeans, after failing to find her panties. Then, W.S. and several others took J.S. home. SBB and W.S. said that J.S. appeared to have a normal demeanor, although one noted that she may have been upset about something related to her grandmother. J.S. said that her vagina was sore the day after the party.
Shortly after the incident, J.S. told her mother what happened, and J.S.'s mother called the defendant. J.S.'s mother said that the defendant told her some of the partygoers had put J.S. on the bed in the master bedroom and that he (the defendant) left the room at that point. Unsatisfied with this explanation, J.S.'s mother called the defendant back and recorded a portion of the conversation on her cell phone. In this conversation, the defendant told J.S.'s mother that he (the defendant) picked up J.S. and put her in his bed. The defendant admitted that he stayed in bed with J.S. that night. The defendant said he did not know how J.S. came to be naked. In both conversations, the defendant denied improper conduct with J.S.
The recording of this conversation is of poor quality and only captured the defendant's side of the conversation. The district attorney asked its information technology manager, Matthew Wright, to try to make the conversation more audible. By using a piece of Sony software he bought at a Best Buy store, Wright was able to enhance the recorded conversation. Wright is mostly self-taught in the field of audio enhancement, but he has been accepted as an expert in that field four times. The court accepted Wright as an expert in this case over the defendant's objection. The court heard the enhanced recording of the conversation, and J.S.'s mother confirmed that the conversation was as she remembered it.
Julie Strother, the defendant's ex-wife, discovered "a pot that had dried-up puke in the bottom of it, with a pair of navy blue wind shorts on top of it," while vacuuming the defendant's bedroom in September 2007. She stated that she found a pair of panties partially hidden by a file cabinet, located about a foot from the pot. The shorts and the panties matched the description that the victim gave of her clothing on the night of the party. The defendant repeatedly denied to Julie Strother that he touched J.S.
After police arrested the defendant based on J.S.'s statement, the defendant admitted to police that he had given alcohol *135 to the youths, but refused to speak about the molestation charge. Strother was subsequently charged with contributing to the delinquency of juveniles and with molestation of a juvenile. In an earlier trial, he was convicted of the delinquency charge; he elected to have a bench trial for the molestation charge. Over the defendant's objection and pursuant to La. C.E. art. 615(B)(4), the trial court allowed the victim's mother to sit in on the entire trial, excusing her from the rule of sequestration.
In addition to the evidence already discussed, the defendant opted to testify in his own behalf. He denied having knowledge of J.S.'s age, although Julie Strother testified that she was certain that the defendant did know her age. He also denied ever telling J.S. he was going to make her his girlfriend or that he kissed her on the neck. He stated that he observed J.S. vomit during the party and realized that she was so drunk that she was incoherent. The defendant said that he did not know how J.S. got into his bed and denied that he put her there. He admitted getting into bed with J.S. at 3:00 or 4:00 in the morning, but said that he slept on the opposite side of the bed, fully clothed and under a separate cover. He said that he did not touch J.S. at any time. He also denied using any force, duress, menace or exercising any control or intimidation over J.S.
After finding J.S. to be a credible witness and determining that the defendant had supervision or control over her during the party, the trial court found the defendant guilty of molestation of a juvenile. The trial court sentenced Strother to serve 12 years' imprisonment at hard labor, with all but three years suspended and imposed a $3,000.00 fine and 5 years of supervised probation after his release. The court also ordered the defendant to complete a sex-offender program, prohibited him from unsupervised visitation with a juvenile and from serving alcohol to juveniles. Additionally, the court ordered the defendant to pay up to $3,000.00 for mental health counseling fees for the victim, if necessary. The defendant objected to the sentence as "being severe under the circumstances." The defendant now appeals, urging six assignments of error.

DISCUSSION

Assignments of Error Numbers Two and Five: Sufficiency of the Evidence
In the defendant's second assignment of error, he contends that the trial court misinterpreted and/or misapplied the elements of the statute with which he was charged. More specifically, the defendant argues that the trial court erred in finding the mere presence of an individual to be equivalent to the statutory requirement of supervision, control, and intimidation. The state contends that the facts provide a clear indication that the defendant did have supervision and control over the victim.
The defendant's fifth assignment of error alleges that the trial court failed to properly apply the beyond a reasonable doubt standard of proof. The defendant alleges the evidence was not sufficient for conviction under the statute charged. The state contends that the testimony of the victim, which is corroborated by two other witnesses, clearly supports the molestation of a juvenile charge. Due to the fact that assignments of error numbers two and five both challenge the sufficiency of the state's evidence of the defendant's guilt, we will address these interrelated errors together.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the *136 reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Under the Jackson v. Virginia standard, we review the record in the light most favorable to the prosecution to determine whether the evidence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347; State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia and does not extend to credibility determinations made by the trier of fact. State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020; State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
La. R.S. 14:81.2, which defines the crime of molestation of a juvenile, provides in part:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
J.S. testified that she awoke in the defendant's bed while the defendant was having sex with her. The trial court found J.S.'s testimony to be credible and accepted her version of events over that of the defendant despite J.S.'s admitted intoxication at the time. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La. App. 2d Cir.5/9/07), 956 So.2d 769; State v. Byrd, 40,480 (La.App. 2d Cir. 1/27/06), 921 So.2d 219 writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35. J.S.'s testimony provides sufficient evidence to prove beyond a reasonable doubt that the defendant committed a lewd or lascivious act upon the person of J.S. with the specific *137 intent of gratifying the defendant's sexual desire. Because J.S. was 14 years old at the time of the offense and the defendant was 38 years old, the state also offered the sufficient proof of the age element of the statute.
The defendant strongly argues that the evidence was insufficient to prove that he committed the act "by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile."
There is no evidence of any kind to support a finding that the defendant used force, violence, duress, psychological intimidation, or a threat of great bodily harm in committing this offense. In State v. LeBlanc, 506 So.2d 1197 (La.1987), the supreme court held that the "use of force" element required proof of the use of force "substantially greater than or substantially different from the force which is necessary to commit the less serious offense of indecent behavior with a juvenile." The victim did not report that the defendant used a greater degree of force than was required to commit the sex act, so the state's proof is insufficient on that ground.
We must now determine whether the evidence viewed in the light most favorable to the state proves beyond the reasonable doubt the defendant's use of influence by virtue of a position of control or supervision over the juvenile, J.S., as required by La. R.S. 14:81.2. The defendant cites State v. Ragas, 607 So.2d 967 (La.App. 4th Cir.1992), writ denied, 612 So.2d 97 (La.1993), where the appellate court stated:
The final element which the State was required to prove was the use of influence by virtue of a position of control or supervision over the juvenile. We conclude that on the date of the incident described in count two, the evidence is insufficient to prove this element of the crime. The victim went to defendant's house without his prior knowledge or consent and was able to leave the house at will. The only evidence suggesting any control or supervision by defendant was the victim's positive response to the State's question that "he (defendant) look [sic] after you and Rolanda when you were playing sometimes?" The victim's mother testified that there were no arrangements made with defendant or his wife about keeping the victim that day. The evidence shows that the victim was under no constraints to remain with her uncle nor be subject to his supervision. Accordingly, the evidence is insufficient to support attempted molestation of a juvenile.
In this case, the evidence shows that the defendant was the only adult present at the party, and in particular he watched the youths while they were in the pool. The defendant created the situation that led to the lewd act by furnishing J.S. with alcohol and by requiring J.S. to stay at his house, in the absence of a designated driver, once she began drinking. By requiring J.S. to stay at his house, in the absence of a designated driver, the defendant was able to use his influence by virtue of his position of supervision or control to facilitate the commission of the crime. The defendant's rule requiring the intoxicated children to stay unless they had a designated driver amounts to a degree of supervision or control.
Through the use of his influence, in the physical sense, over J.S., the defendant brought the victim into a place where he could pursue his assault in privacy and without interruption. Furthermore, Strother was the only person who had the authority to supervise the party; he was the only adult present, and the party was *138 at his home. The fact that Strother chose to do very little to supervise the youths and instead encouraged them to drink alcohol does not negate the conclusion that Strother was, in fact, in charge of the party and of J.S. in her highly intoxicated condition at the time he committed the lewd act.
We conclude that a rational trier of fact could have found that the state's evidence was sufficient beyond a reasonable doubt to convict the defendant as charged. Therefore, these assignments of error are without merit.

Assignment of Error Number One: Sequestration of Witnesses
In his first assignment of error, the defendant asserts that the trial court erred in failing to properly sequester the witnesses. More specifically, the defendant contends that the trial court unlawfully ordered that all witnesses be sequestered, with the exception of J.S. and her mother. Over the objection of the defendant, the trial court allowed the victim's mother to remain in the courtroom during the testimony of all of the witnesses. The defendant argues that this ruling was in error, and that La. C.E. art. 615(B)(4) is unconstitutional because it violates his right to confront and cross-examine the witnesses.
La. C.E. art. 615 provides, in pertinent part:
A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
B. Exceptions. This Article does not authorize exclusion of any of the following:
. . .
(4) The victim of the offense or the family of the victim.
The Sixth Amendment to the United States Constitution provides, in part:
In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....
La. Constitution Article 1, § 16 states in pertinent part:
... An accused is entitled to confront and cross-examine the witnesses against him....
The main and essential purpose of the confrontation right is to secure, for the opponent, the opportunity of cross-examination. State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131, 1135, citing Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), quoting 5 J. WIGMORE, EVIDENCE § 1395, p. 123 (3d ed.1940). La. C.E. art. 615(B)(4) does not, on its face, deny a defendant the right to confront or cross-examine any of the witnesses against him.
The purpose of sequestration is to assure that a witness testifies as to his own knowledge, to prevent witnesses from being influenced by the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Lucas, 39,419 (La.App. 2d Cir.3/9/05), 896 So.2d 331. In the instant case, the overwhelming bulk of relevant evidence was developed through J.S.'s testimony. The other party guests assisted in providing a complete picture of what happened at the party.
J.S.'s mother, the witness who was excepted from the sequestration order, was not present at the party. She engaged in a telephone conversation with the *139 defendant after the crime had already occurred. The most important element of J.S.'s mother's testimony was the defendant's admission that he took J.S. from the couch to the bed in the master bedroom. This is a minor, but relevant point in the determination of whether the defendant used his influence over J.S. Whether or not the defendant told J.S.'s mother, in a private but recorded conversation, about moving J.S. to the bed is not testimony that could have been influenced by the other witnesses.
Through J.S.'s mother's testimony, the defendant was given the opportunity to introduce the evidence that he had repeatedly denied touching J.S. during this encounter, exculpatory evidence that he might not otherwise have been able to introduce had he not chosen to testify. The other matters addressed by J.S.'s mother concerned things that the defendant had said about the event after it occurred. The witness made a recording of the defendant's statements that verifies her recollection of the events.
After reviewing the record, we find that the trial court did not abuse its discretion in allowing J.S.'s mother to remain in the courtroom during the testimony of all of the witnesses. Pursuant to La. C.E. art. 615(B)(4), the presence of J.S.'s mother in the courtroom was not a violation of the rule of sequestration. This assignment of error is without merit.

Assignment of Error Three: Qualification of an Expert
The defendant argues that the trial court erred in accepting Matthew Wright, the information technology manager for the district attorney's office, as an expert in the field of voice enhancement, and through his efforts, allowing the introduction of the enhanced recording of the conversation between the defendant and J.S.'s mother.
La. C.E. art. 702, regarding testimony by experts, provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
As this court explained in State v. Franklin, 42,055 (La.App. 2d Cir.5/09/07), 956 So.2d 823, writ denied, XXXX-XXXX (La.1/11/08), 972 So.2d 1162:
The standard for accepting expert testimony was set forth in State v. Foret, 628 So.2d 1116 (La.1993), wherein the supreme court adopted the test set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); State v. Boudreaux, 41,660 (La.App. 2d Cir. 12/13/06), 945 So.2d 898. Daubert requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. State v. Chauvin, 02-1188 (La.5/20/03), 846 So.2d 697.
A trial court has great discretion in determining the competence of an expert witness, and that determination will not be overturned absent an abuse of discretion. La. C.E. art. 702; State v. Gipson, 37,132 (La.App. 2d Cir.6/25/03), 850 So.2d 973, writ denied, 03-2238 (La.1/30/04), 865 So.2d 75. The test of competency of an expert is his knowledge of the subject about which he is called upon to express an opinion. A combination of specialized training, work experience and practical application of the expert's knowledge can combine to demonstrate that a person is an expert. State v. Allen, [36,180 (La.App. 2d *140 Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566 and 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004) ]; State v. Gipson, supra.

The subject of this witness's testimony was an audio recording between the defendant and the victim's mother. The expert witness explained that he was able to use a piece of commercial software to remove background noise and increase the volume of the conversation to make it more audible. The witness noted that the process entailed no change in the "order" of the conversation and that the enhanced conversation was identical with the original with the exception of the diminished background noise and volume of the voices. He testified that he had performed this enhancement more than 10 but fewer than 50 times in the past.
In this case, the trial court did not err in accepting the witness as an expert for this purpose. Although the witness was essentially self-taught in this field, there is no evidence that the processing of audio through a computer for enhancement requires the witness to have additional special training to render the enhancement reliable. The substance of the conversation, not the process by which the recording was enhanced, was the relevant evidence, and the witness was qualified by experience to perform the enhancement; he was not being qualified to give an opinion about the science behind the process of enhancement where that science was the ultimate issue in the case. Finally, J.S.'s mother listened to the enhanced recording and pronounced it an accurate reproduction of the conversation she had with the defendant, so any error in the trial court's ruling was harmless beyond a reasonable doubt. This assignment of error is without merit.

Assignment of Error Number Four: Testimony of a Non-Expert Witness
Citing La. C.E. art. 701, Strother argues that the trial court erred by allowing J.S. to testify that certain stains that she found on her shirt were semen stains. Lay witnesses are generally not permitted to give expert testimony. However, Louisiana Code of Evidence Article 701 provides:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
J.S. informed the court that she had seen semen prior to this incident, that she was familiar with its appearance, and that she believed the substance on her shirt to be semen. Her testimony was a reasonable inference drawn from her personal observations, and the trial court did not err in admitting this evidence. This assignment of error is without merit.

Assignment of Error Number Six: Sentencing
In his final assignment of error, the defendant objects to his sentence on the grounds that the trial court incorrectly imposed the sentence under La. R.S. 14:81.2(C), which provides:
C. Whoever commits the crime of molestation of a juvenile, when the offender has control or supervision over the juvenile shall be fined not more than ten thousand dollars or imprisoned, with or without hard labor, for not less than one nor more than twenty years, or both, provided that the defendant shall not be eligible to have his conviction set aside *141 or his prosecution dismissed in accordance with Code of Criminal Procedure Article 893.
By contrast, La. R.S. 14:81.2(B) provides for, inter alia, a lesser sentence of imprisonment "with or without hard labor, for not less than one nor more than ten years" in cases without proof of control or supervision. Notably, the penalty provision in La. R.S. 14:81.2(C) differs from the penalty provision in La. R.S. 14:81.2(B) because the offense imposes a more severe penalty if it is proved with evidence that the offense was committed by the use of "control or supervision over the juvenile."
As noted, the record does not show that the defendant made a motion to reconsider sentence other than to urge that the sentence was "severe under the circumstances." Typically, when a defendant's motion for reconsideration merely alleged that the sentence is excessive, a defendant is simply relegated to having the appellate court consider the bare claim of excessiveness. State v. Mims, 619 So.2d 1059 (La.1993). This bare claim preserves only a claim of constitutional excessiveness. Mims, supra; State v. McEachern, 624 So.2d 43 (La.App. 2d Cir.1993). Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. Livingston, 39,390 (La.App.2d Cir.4/6/05), 899 So.2d 733; State v. White, 37,815 (La. App.2d Cir.12/17/03), 862 So.2d 1123.
An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882(A). Additionally, the appellate court may notice sentencing errors as error patent. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790.
The questions of control and supervision were at issue in this case and were the focus of much of the evidence at trial. Furthermore, the trial court found that the state had proven these matters beyond a reasonable doubt. Therefore, the sentence imposed under the harsher scheme provided by La. R.S. 14:81.2(C) is legal and supported by the record. The record reveals that the trial court considered a pre-sentence investigation report and reviewed the defendant's criminal and social history before imposing sentence. The court found that a lesser sentence would deprecate the seriousness of the crime and that the victim was particularly vulnerable due to her intoxication. The trial court gave adequate consideration of the factors enumerated in La. C. Cr. P. art. 894.1. Additionally, the non-suspended portion of the sentence, which only requires the defendant to serve three years in prison for his egregious conduct, is hardly shocking or excessive under the circumstances. This assignment of error is without merit.

ERROR PATENT
The trial court provided de minimis notice of the delay for filing applications for post-conviction relief. We now advise the defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922. See State v. Pugh, 40,159 (La.App. 2d Cir.9/21/05), 911 So.2d 898.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
BROWN, C.J., concurs with written reasons.
*142 BROWN, Chief Judge, concurring.
This record contains a grossly inadequate foundation from which to qualify Matt Wright as an expert in computer forensics. At the time, Wright was an employee of the Webster Parish District Attorney's Office trained to chat on the internet with potential sexual predators. However, under the circumstances of this case, the trial court's error was harmless.
The victim in the case stated that she did not remember anything and could have "dreamed" the rape scenario. However, the record reveals that the victim was in bed, undressed, and physically under the control of defendant who was also undressed and in the bed. Defendant's admission that the victim grabbed his private area and put it where she wanted was sufficiently corroborated to warrant his conviction.
APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, PEATROSS and MOORE, JJ.
Rehearing denied.
NOTES
[1] The minors' initials are used in lieu of their names. La. R.S. 46:1844(W).