GASKINS, J.
 

 hThe defendant, Victoria G. Mickail, was charged with two counts of aggravated arson, two counts of simple arson, and two counts of obtaining a controlled dangerous substance (CDS) by fraud. Pursuant to a plea agreement, she was allowed to plead guilty to one count of aggravated arson, one count of simple arson, and one count of obtaining a CDS by fraud. She was sentenced to agreed-upon terms of 15 years at hard labor for the simple arson and five years at hard labor, suspended, with five years of supervised probation for the CDS charge. The plea bargain set a sentencing cap of 15 years for the aggravated arson; she received a sentence of 14½ years at hard labor, with the first two years to be served without benefit of parole, probation or suspension of sentence. Also pursuant to the plea agreement, the arson sentences were imposed concurrently with each other but consecutive to the CDS sentence. The defendant appeals. We affirm the defendant’s convictions and sentences.
 

 FACTS
 

 In July 2004, the defendant set two separate fires several days apart at the home of neighbors in Monroe; the house was a total loss. In the same time period, the defendant also set two separate fires several days apart at her own home. During the first fire at the defendant’s house, the defendant, her husband and one of her sons were inside; no one was injured. During the second fire, her husband was asleep upstairs; however, he was awakened by the smoke and escaped injury. Investigators discovered that the defendant had a history of arson and drug abuse.
 

 LThe defendant was charged with two counts of aggravated arson for the fires set at her own home and two counts of simple arson for the fires set at her neighbors’ home. She was also charged with two counts of obtaining CDS by fraud pertaining to drugs she obtained for her own use through a pharmacy where she worked as a pharmacist.
 

 The defendant entered a plea of not guilty and not guilty by reason of insanity. While awaiting trial, her attorney apparently made oral motions that a sanity commission be formed to assess the defendant’s capacity to stand trial. In a minute entry dated October 20, 2004, the trial court denied the motion. In a minute entry dated August 21, 2006, the trial court found that the defendant was capable of standing trial and again denied her motion for the appointment of a sanity commission.
 

 Although a sanity commission was never appointed, the defendant was examined by Dr. Saxon Elliott, a clinical psychologist, and Dr. George Seiden, a psychiatrist. Dr. Elliott saw the defendant in May 2006. In his report, he suggested that she had a history of severe mood disorder, dissociative disorder, and personality disorder with borderline, histrionic, dependent and avoidant features. Dr. Seiden saw her in May 2007. He issued a report to the state which detailed all of the medical records he reviewed. In Dr. Seiden’s expert opinion, there was no evidence that the defendant “suffered from any mental disease or defect that interfered with her ability to
 
 *73
 
 know the rightness or wrongness of her behavior at the time that she committed the behavior.” He also concluded that she was capable |3of assisting her attorney in her defense. Dr. Seiden viewed her claims of dissociative episodes “with skepticism.”
 

 In July 2007, the defendant withdrew her pleas of not guilty and not guilty by reason of insanity. She then pled guilty to one count of aggravated arson, one count of simple arson, and one count of obtaining CDS by fraud. The state agreed to dismiss the other three charges and not file a habitual offender bill against the defendant, who had a prior felony conviction for Medicaid fraud. The terms of her plea agreement provided for an agreed-upon sentence of 15 years at hard labor, the maximum possible term of imprisonment, for the simple arson charge. As to the CDS charge, the plea bargain set forth a sentence of five years at hard labor; this sentence was to be suspended and the defendant was to be placed on five years of supervised probation following her release from prison. As to the aggravated arson, the plea established a sentencing cap of 15 years; also, it was agreed she would be sentenced pursuant to a presentence investigative (PSI) report. The sentences for the arsons were to be served concurrently with each other and consecutively with the CDS charge. Following a sentencing hearing at which the victims were allowed to address the court, the trial court sentenced the defendant in compliance with the plea bargain. On the count of aggravated arson, the trial court sentenced the defendant to 14½ years at hard labor without the benefit of parole, probation, or suspension of sentence.
 

 The defendant filed a timely motion to reconsider sentence in which she asked the court to reconsider the length of the 14½ year sentence for |,, aggravated arson and the imposition of the “without benefits” provision to the entire sentence. She asserted that the sentence was excessive and would cause hardship to her family. Due to confusion, the hearing on the motion to reconsider was not held until two years later in October 2009. Before the trial court ruled on the specific issues raised in the motion to reconsider, it indicated that it would allow post-sentencing certificates earned by the defendant during her incarceration and evidencing her rehabilitation to be introduced for mitigation purposes. The state immediately applied for writs to this court as to the admission of the certificates.
 

 This court found that the defendant’s sentence was not subject to appeal or review because it was imposed in conformity with a sentencing agreement set forth in the record and involved a specific sentence or a sentencing cap. However, we found that the original sentence on the aggravated arson charge was illegal because the entirety of the sentence was imposed without benefit of parole, probation, or suspension of sentence; the matter was remanded to the trial court for correction. We did not rule on the issue of the admissibility of the certificates of progress.
 

 After this court remanded the case to the trial court for resentencing, the defendant filed a motion requesting that a supplemental PSI report be ordered; the trial court denied the motion. During the re-sentencing hearing, the trial court reversed itself as to the admission of the certificates. The record reflects that prior to resentencing, the trial court allowed the defendant and her counsel to review the original PSI report. The trial court sentenced the defendant on the aggravated arson charge to 14½ years at | shard labor, with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence, to run
 
 *74
 
 concurrent with her 15-year sentence for simple arson.
 

 The defendant filed the instant appeal, asserting five assignments of error.
 

 EVIDENCE OF REHABILITATION
 

 In two assignments of error, the defendant contends that the trial court committed manifest error in not admitting evidence of her rehabilitation efforts since her first sentencing. Specifically, she claims that the trial court erred in not ordering a supplemental PSI report to consider more current mitigating evidence. Additionally, she argues that the trial court should have admitted “certificates of progress” evidencing her rehabilitation
 
 [1]
 
 ; she asserts that the information was not “post-sentence” but “pre-sentence” to the resentencing. In opposition, the state contends that the decisions to deny the motion for a supplemental PSI report and to not admit the certificates rest within the trial court’s broad sentencing discretion.
 

 Law
 

 A defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. La. C. Cr. P. art. 881.2(A)(2).
 

 Where a specific sentence or a sentencing cap has been agreed upon as a consequence of a plea bargain, a sentence imposed within the agreed | grange cannot be appealed as excessive, and there is no need for the trial judge to give reasons for the sentence as normally required by La. C. Cr. P. art. 894.1. La. C. Cr. P. art. 881.2(A)(2).
 
 State v. Young,
 
 96-0195 (La.10/15/96), 680 So.2d 1171;
 
 State v. Foster,
 
 42,212 (La.App.2d Cir.8/15/07), 962 So.2d 1214;
 
 State v. Small,
 
 44,554 (La.App.2d Cir.8/19/09), 17 So.3d 491,
 
 writ denied,
 
 2009-2057 (La.4/5/10), 31 So.3d 356.
 

 An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882(A). Further, the appellate court may notice sentencing errors as error patent.
 
 State v. Williams,
 
 2000-1725 (La.11/28/01), 800 So.2d 790;
 
 State v. Strother,
 
 43,363 (La.App.2d Cir.8/20/08), 990 So.2d 130,
 
 writ denied,
 
 2008-2289 (La.5/15/09), 8 So.3d 580.
 

 Defendants have no constitutional or other right to demand a presentence investigation. That investigation is conducted at the option of the court. La. C. Cr. P. art. 875 A(1). If a PSI is conducted, and a report compiled, a defendant is entitled to a fair and accurate report.
 
 State v. Lockwood,
 
 439 So.2d 394 (La.1983).
 

 Discussion
 

 The defendant entered into a plea agreement which included two agreed-upon sentences and a sentencing cap. She initially received an illegal sentence on the charge of aggravated arson as the entire sentence was imposed without benefits as opposed to two years of the sentence being without benefits. On a writ application, this court instructed the trial court |7to correct that error. During the resentenc-ing hearing, the trial court corrected the aggravated arson sentence as instructed by this court. Since the sentence was entered into as part of a plea agreement and the illegality that she complained of has now been corrected, the defendant does not have a right of review pertaining to that sentence.
 

 These assignments of error are merit-less.
 

 SANITY COMMISSION
 

 In two other assignments of error, the defendant contends that she had mental
 
 *75
 
 deficiencies that precluded her from fully comprehending the plea she entered and that the trial court should have held a sanity commission to make certain she understood the plea bargain. She asserts that the plea is not constitutionally valid because nothing in the record indicates she was sane enough to agree to the plea. On the other hand, the state maintains that the record contains ample evidence demonstrating the defendant’s competency.
 

 Law
 

 A defendant does not have an absolute right to the appointment of a sanity commission simply upon request. A trial judge is only required to order a mental examination of a defendant when there are reasonable grounds to doubt the defendant’s mental capacity to proceed. La. C. Cr. P. art. 643. It is well established that “reasonable grounds” exist when one should reasonably doubt the defendant’s capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. To determine a defendant’s capacity, |sLa. C. Cr. P. arts. 642, 643, and 647 provide guidance.
 
 State ex rel. Seals v. State,
 
 2000-2738, p. 5 (La.10/25/02), 831 So.2d 828, 832.
 

 La. C. Cr. P. art. 642 allows that the defendant’s mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. This article additionally requires that when the question of the defendant’s mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution until the defendant is found to have the mental capacity to proceed. La. C. Cr. P. art. 643 provides, in pertinent part, “The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant’s mental capacity to proceed.” Last, if a defendant’s mental incapacity has been properly raised, the proceedings can only continue after the court holds a contradictory hearing and decides the issue of the defendant’s mental capacity to proceed. See La. C. Cr. P. art. 647;
 
 State ex rel. Seals v. State, supra
 
 at 832-33. This protection, however, does not require that every time a defendant feigns incapacity the court must order a full-blown sanity commission. In
 
 State v. Berry,
 
 391 So.2d 406, 411 (La.1980), the Louisiana Supreme Court firmly held that the trial court is granted great discretion in determining if a defendant should be afforded a mental examination to determine capacity. Indeed, where a trial judge finds enough evidence to doubt a defendant’s capacity, the court may order that the defendant be examined by a single psychiatrist to satisfy the requirements of La. C. Cr. P. art. 643. In other words, there is no need for a sanity commission to be appointed each time |3capacity of a defendant is questioned.
 
 State ex rel. Seals v. State, supra
 
 at 833.
 

 The determination of sanity is a factual matter.
 
 State v. Edwards,
 
 44,552 (La.App.2d Cir.8/19/09), 17 So.3d 1037. A reviewing court owes the trial court’s determinations as to the defendant’s competency great weight, and the trial court’s ruling thereon will not be disturbed on appeal absent a clear abuse of discretion.
 
 State v. Edwards, supra.
 

 Discussion
 

 Our review of the record reveals no error in the trial court’s denial of the defendant’s motion for the appointment of a sanity commission. The record is replete with evidence establishing that she was competent to stand trial, and the trial judge substantially complied with the dictates of La. C. Cr. P. art. 643 by allowing her to be evaluated by Dr. Seiden. In his written report to the court, the doctor
 
 *76
 
 concluded that the defendant was competent to stand trial and able to fully assist her trial counsel. Additionally, he found no evidence that she could not distinguish right from wrong at the time of the offenses. We note that Dr. Seiden interviewed the defendant less than two months before her guilty plea. Finally, the colloquy between the trial judge and the defendant at the time of her guilty plea, her responses to questions, her statement to the victims, and her later statement to the court before sentencing, all show that the defendant was completely coherent, rational and able to comprehend the proceedings against her.
 

 These assignments of error are without merit.
 

 |inPLEA BARGAIN
 

 In her final assignment of error, the defendant contends that her plea was invalid because the trial judge failed to stay within the bounds of the plea agreement.
 

 In the instant case, the state, the defendant, and the trial court all agreed to a sentencing cap or ceiling of 15 years on the charge of aggravated arson. Additionally, they all agreed to the specific sentences imposed for the other two crimes to which the defendant pled guilty. The defendant was sentenced within those bounds. Therefore, under La. C. Cr. P. art. 881.2(A)(2), the defendant is precluded from appealing the sentence imposed within the bounds of an agreed-upon plea bargain.
 

 This assignment of error lacks merit.
 

 CONCLUSION
 

 The defendant’s convictions and sentences are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . These certificates pertain to the defendant's participation in various religious and/or educational programs and the "Locks of Love” hair donation program.