STATE OF LOUISIANA
v.
JAMS WALDER
No. 2009 KA 0716.
Court of Appeals of Louisiana, First Circuit.
September 11, 2009.
Not Designated for Publication
WALTER P. REED, District Attorney Counsel for Appellee State of Louisiana
KATHRYN LANDRY, Special Appeals Counsel
MARION B. FARMER, MILES TRAPOLIN, Counsel for Defendant/Appellant Janis Walder
BEFORE: WHIPPLE, HUGHES, and WELCH, JJ.
HUGHES, J.
The defendant, Janis Walder, was charged by bill of information with 123 counts of aggravated cruelty to animals in violation of LSA-R.S. 14:102.1. She initially pled not guilty to all charges. Prior to trial, the defendant withdrew her not guilty plea and pled guilty as charged. Following a thorough Boykin examination,[1] the trial court accepted the defendant's guilty plea.
Pursuant to a plea agreement, the defendant was sentenced to imprisonment at hard labor for ten years. The court suspended the sentence and placed the defendant on probation for five years with the following special conditions of probation: (1) pay supervision fees during the course of probation; (2) submit to random drug screens at the request of the probation officer at her expense; (3) the defendant is to have no more than one pet, and it must be spayed or neutered; (4) the defendant is to undergo a mental health evaluation and treatment if recommended; and, (5) the defendant is to make restitution at an amount to be determined by the court, if deemed appropriate. The defendant was also ordered to pay a fine of $5,000.00 and costs. Following a restitution hearing, the trial court ordered the defendant to pay approximately $46,679.00 in restitution. The defendant moved for reconsideration of the restitution order. The trial court denied the motion. The defendant appealed. On appeal, this court found error in the trial court's imposition of a single sentence for 123 convictions, vacated the sentence and remanded the matter to the trial court for resentencing. The split appeal decision, Judge Downing writing, included language instructing the trial court to conduct a reopened restitution hearing. State v. Walder, XXXX-XXXX (La. App. 1 Cir. 12/28/06), 952 So.2d 21 (Pettigrew, J., concurring in part, dissenting in part; Hughes, J., dissenting). The defendant sought supervisory review of this court's ruling with the Louisiana Supreme Court.
The Supreme Court affirmed this court's order remanding the case to the trial court for resentencing, but deleted the requirement that the court reopen the restitution hearing. The Supreme Court noted that this court had not rendered a judgment as to the appropriate basis for calculating the amount of restitution owed. The Court advised that the trial court was at liberty to reconsider its order of restitution in light of the observations expressed by Judge Downing, but the trial court was not bound by the remarks. State v. Walder, XXXX-XXXX (La. 10/05/07), 965 So.2d 865 (per curiam).
On remand, the trial court resentenced the defendant to a reduced term of imprisonment for five years at hard labor on each of the 123 counts. The court ordered that the sentences run concurrently. The court suspended the sentences and placed the defendant on five years probation with the same special conditions originally ordered. Considering the rulings of this court and the Supreme Court, the trial court allowed the parties to submit briefs on the restitution issue. Later, in open court, the trial judge indicated he was satisfied with the restitution hearing previously held and was prepared to issue a ruling.
The trial judge maintained the original ruling on the restitution issue and again ordered the defendant to pay restitution in the exact same amounts. Counsel for the defendant objected to the court's ruling. The defendant appeals, again challenging the validity of the trial court's restitution order. The defendant lists the following as errors by the trial court:
1) Animals are not victims to which restitution can be ordered. Only persons can be victims.
2) The [caretakers] of abused animals are not one of the enumerated parties who are entitled to restitution under the Code of Criminal Procedure.
3) The criminal court cannot use restitution to penalize defendants.
4) Restitution is not an alternative to a civil suit for damages.

FACTS
On March 10, 2004, the St. Tammany Parish Sheriff's Office seized approximately 119 dogs, 44 horses and 7 turtles from the defendant's Lacombe, Louisiana residence in connection with a complaint of companion animal hoarding. The condition of the defendant's residence was described as deplorable, and many, if not all, of the animals were in extremely poor health. Shortly thereafter, on March 16, 2004, the defendant executed a "Transfer of Animals" transferring the ownership of the animals seized to St. Tammany Parish. The transfer document provided that St. Tammany would have the sole ownership and control of the animals.

VALIDITY OF THE RESTITUTION ORDER
In her brief, the defendant essentially urges the same challenges to the restitution order that she urged in the prior appeal. The defendant contends an order of restitution in this animal cruelty case was in error because there is no "victim" to whom restitution can be paid. Specifically, she asserts the animals are not victims and thus, they are not entitled to receive restitution. She further asserts that LSA-C.Cr.P. art. 895.1 limits restitution to select persons and the caretakers called upon by St. Tammany Parish to assist with the care and upkeep of the animals in this case are not amongst those selected.[2] Noting that restitution is not intended to be punitive and cannot be used as an alternative to civil litigation, the defendant urges this court to reverse the restitution order of the trial court. In response, the state argues that the defendant was advised at the time of the guilty plea that she would be required to pay restitution. Thus, the state contends the defendant should not be allowed to attack the payment of restitution, a condition to which she agreed on the record. The state further argues that LSA-R.S. 14:102.2 authorizes the trial court to order the payment of boarding and/or veterinary expenses for animals seized as a result of the defendant's cruelty. Therefore, the state asserts, the trial court's restitution order is valid and should be upheld.
Review of the record reveals, at the time of the guilty plea and sentencing, the defendant acquiesced in the court's inclusion of payment of restitution as a condition of her probation. The defendant moved for reconsideration of the restitution order arguing only that her responsibility and liability for the animals ended when she relinquished ownership of the animals to St. Tammany Parish. She argued that, once the transfer of ownership occurred, St. Tammany became the sole owner of the animals, and as such, was solely responsible for the expenses associated with their care after the transfer.
The record reflects that Jill Walker, an officer with Probation and Parole, filed a Motion to Set Restitution on February 11, 2005. In the motion, Walker named seven parties that were requesting restitution from the defendant for expenses incurred during and after the defendant's arrest for the instant offense. Those parties were:

 Dr. Brent Robbins, Department of Animal Services $65,047.33
 Sgt. Kenny Baham, St. Tammany Sheriff's Office $14,560.00
 Mr. Lee Mauberret, assisted with animal recovery $10,985.00
 Ms. Vickie Campos, PAWS Animal Clinic $11,535.04
 Mr. Dean Born, Slidell Animal Control $6,010.00
 Ms. Anne Belle, Southern Animal Foundation $23,655.00
 Ms. Debbie Harris, La. Wildlife Rehab Association $2,500.00

At the conclusion of a restitution hearing, the trial court declined to order restitution in the amount requested by some of the parties because the court was of the opinion that circumstances surrounding the boarding and care for the animals were extraordinary in some of the cases and the prices were also inflated. The court ordered the defendant to pay $10,374.93 to the St. Tammany Animal Services, $5,000.00 to the St. Tammany Parish Sheriff's Office, $10,985.00 to Mr. Lee Mauberret, $5,619.27 to PAWS, $3,750.00 to the City of Slidell, $6,000.00 to The Humane Society, and $4,950.00 to the Southern Animal Foundation. The trial court also ordered that the total amount of restitution (approximately $46,679.00) was to be offset by the proceeds from the sale of the horses.[3]
The transcript of the Boykin hearing reflects that the trial court, in discussing the plea agreement and the conditions of probation to be imposed, advised the defendant that she would be responsible for payment of restitution and a hearing would be held to determine the amount. The defendant responded affirmatively when asked if she understood the expressed conditions of her probation. The only objection by the defendant regarding her sentence and/or probation came when the trial court explained the role of the supervising probation officer and iterated the importance of the defendant's compliance with all conditions of probation. The defendant then expressed concern only with a probation officer's interference with her residential hygiene practices.[4] Neither the defendant, nor her counsel, objected to the requirement that the defendant pay restitution to those aggrieved by her actions towards these animals, i.e. the parties named herein.
Louisiana Code of Criminal Procedure article 881.2(A)(2) provides that "[t]he defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." The prohibition of this article is applicable to both agreed specific sentences and agreed sentence ranges or sentencing caps. See State v. Young, 96-0195, p. 5 (La. 10/15/96), 680 So.2d 1171, 1174; State v. Fairley, 97-1026, pp. 4-5 (La. App. 1 Cir. 4/8/98), 711 So.2d 349, 352. The suspended imprisonment sentence, five year probation period, and the payment of restitution in this case were all done in conjunction with a plea agreement in this case. However, because the issue of whether restitution was allowed in this case is one that goes to the legality of the sentence, the defendant's claims will be reviewed.
We disagree with the defendant's claim that restitution is not authorized in this case or under the animal cruelty law because the only "victim" is an animal. In support of his argument, the defendant heavily relies on the use of the term "victim" in the provision of LSA-C.Cr.P. art. 895.1 regarding payment of restitution. However, as the state pointed out in its brief, the language of LSA-C.Cr.P. art. 895, which lists the conditions of probation, is much more broad. It specifically allows the court to order the defendant to "[m]ake reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court." LSA-C.Cr.P. art. 895(A)(7) (emphasis added). Furthermore, as noted in the prior appeal opinion, although LSA-R.S. 14:102.1 (the statute under with the defendant was convicted) and LSA-C.Cr.P. art. 895.1 (a probation statute) do not expressly authorize the payment of restitution to many of the parties ordered herein,[5] LSA-R.S. 14:102.2(D) does allow the seizure and potential disposition of animals cruelly treated. It provides:
A. When a person is charged with cruelty to animals, said person's animal may be seized by the arresting officer and held pursuant to this Section.
B. (1) The seizing officer shall notify the owner of the seized animal of the provisions of this Section by posting written notice at the location where the animal was seized or by leaving it with a person of suitable age and discretion residing at that location within twenty-four hours of the seizure.
(2) The seizing officer shall photograph the animal within fifteen days after posting of the notice of seizure and shall cause an affidavit to be prepared in order to document its condition in accordance with R.S. 15:436.2.
(3) The seizing officer shall appoint a licensed veterinarian or other suitable custodian to care for any such animal. The custodian shall retain custody of the animal in accordance with this Section.
(4) The seized animal shall be held by the custodian provided for in Paragraph (3) for a period of fifteen consecutive days, including weekends and holidays, after such notice of seizure is given. Thereafter, if a person who claims an interest in such animal has not posted bond in accordance with Subsection C, the animal may be humanely disposed of by sale, adoption, or euthanasia.
C. A person claiming an interest in any animal seized pursuant to this Section may prevent the disposition of the animal as provided for in Subsection B by posting a bond with the court within fifteen days after receiving notice of such seizure in an amount sufficient to secure payment for all reasonable costs incurred in the boarding and treatment for any seized animal for a thirty-day period commencing on the date of initial seizure. Such bond shall not prevent the department, agency, humane society, or other custodian of the animal from disposing of the animal in accordance with Subsection B at the end of the thirty-day period covered by the bond, unless the person claiming an interest posts an additional bond for such reasonable expenses for an additional thirty-day period. In addition, such bond shall not prevent disposition of the animal for humane purposes at any time, in accordance with Subsection E of this Section. The amount of the bond shall be determined by the department, agency, humane society or other custodian of the animal as authorized by the court in accordance with the current rate for board and on the condition of the animal after examination by a licensed veterinarian.
D. Upon a person's conviction of cruelty to animals, it shall be proper for the court, in its discretion, to order the forfeiture and final determination of the custody of any animal found to be cruelly treated in accordance with this Section and the forfeiture of the bond posted pursuant to Subsection C as part of the sentence. The court may, in its discretion, order the payment of any reasonable or additional costs incurred in the boarding or veterinary treatment of any seized animal prior to its disposition, whether or not a bond was posted by the defendant. In the event of the acquittal or final discharge without conviction of the accused, the court shall, on demand, direct the delivery of any animal held in custody to the owner thereof and order the return of any bond posted pursuant to Subsection C, less reasonable administrative costs.
E. Nothing in this Section shall prevent the euthanasia of any seized animal, at any time, whether or not any bond was posted, if a licensed veterinarian determines that the animal is not likely to survive and is suffering, as a result of any physical condition. In such instances, the court, in its discretion, may order the return of any bond posted, less reasonable costs, at the time of trial.
(Emphasis added.)
In her brief, the defendant argues that LSA-R.S. 14:102.2(D) is inapplicable because it was not relied on or considered by the trial court on the record and because the animals in question were seized pursuant to a parish ordinance prohibiting companion hoarding and not LSA-R.S. 14:102.2. This argument clearly lacks merit. The language of LSA-R.S. 14:102.2(D) provides for payment of expenses "upon a person's conviction of cruelty to animals." The language is not conditioned upon the animals having been seized pursuant to that article. Therefore, although the defendant was not initially charged with cruelty to animals at the time of the March 10, 2004 seizure of the animals, we note that the defendant was ultimately charged with, and convicted of, 123 counts of aggravated cruelty to those animals, under LSA-R.S. 14:102.1. Because the animals that were the subject of the defendant's cruelty were already seized, the seizure procedure set forth in LSA-R.S. 14:102.2(A) and (B) was not utilized in this case. However, the fact that the Parish secured and executed a warrant for seizure of the animals pursuant to St. Tammany Parish Ordinance Section 4-125.00 (and not LSA-R.S. 14:102.2(B)) does not render LSA-R.S. 14:102.2(D), which deals with the potential penalties that flow from a conviction under section 102, inapplicable herein. Clearly, it was proper for the trial court to order the defendant to pay reasonable expenses for the boarding and veterinary care for the animals, at least, prior to the transfer of ownership.
Equally as clear is the resolution of the defendant's challenge regarding the amount of restitution ordered by the trial court in this case. The defendant contends the trial court erred in ordering payment of expenses for the entire time the animals were in the custody of the various agencies since she transferred ownership of the animals to the parish shortly after their seizure. The defendant argues that, as of the date of the transfer of ownership of the animals, the parish of St. Tammany, as the sole owner of the animals, was responsible for the expenses associated with their boarding and treatment. The defendant further asserts that any of the expenses incurred during the six days between the seizure of the animals and the transfer of ownership should be offset by the proceeds from the sale of the horses.
As was noted in the prior appeal opinion, the record in the case establishes that the defendant executed a "Transfer of Animals" on March 16, 2004, only six days after the March 10, 2004 seizure. The transfer document specifically provided, "Walder understands and acknowledges that upon signing this transfer of ownership of the animals, St. Tammany has sole ownership and control of the animals and that St. Tammany has the sole right to determine the disposition of the animals which includes but is not limited to the sale, adoption or destruction of the animals." Because LSA-R.S. 14:102.2, the only statute fully authorizing the type of expenses involved in this case, clearly contemplates continued ownership of the seized animals, we find, as Judge Downing originally concluded, that the trial court erred in ordering the defendant to pay restitution for boarding and veterinary expenses incurred for the animals after she no longer owned them.
For all of the foregoing reasons, we affirm the defendant's convictions, but we again vacate the sentences and remand this matter to the trial court for further proceedings on the issue of restitution. Based upon the findings expressed in this opinion, the trial court is hereby ordered to conduct a reopened restitution hearing to determine the amount of expenses incurred from the date of the seizure of the animals in question to the date of the transfer of ownership of the animals to the parish. The trial court may, in its discretion, order the defendant to pay these expenses. Since the trial judge reduced the requested restitution amounts based upon his belief that the prices for the services were inflated and that the situation was not handled in the most cost effective manner, we are unable to determine what, if any, portion of the amounts awarded are attributable to the dates the defendant still owned the animals. Also, while the trial court acknowledged that the defendant is to be given credit for the proceeds from the sale of the horses, it is unclear whether the trial court actually considered this credit in rendering its ruling on the restitution amounts. The court is instructed to clarify this credit issue on resentencing. After resentencing, the defendant may perfect a new appeal as to her sentences.
CONVICTIONS AFFIRMED, SENTENCES VACATED; REMANDED FOR FURTHER PROCEEDINGS.
STATE OF LOUISIANA STATE OF LOUISIANA
 COURT OF APPEAL
VERSUS FIRST CIRCUIT
ANIS A. WALDER NUMBER 2009 KA 0715
WHIPPLE, J., dissenting.
The majority herein proposes to again vacate the defendant's sentences and to remand for another restitution hearing, to allow the trial court to determine and fix the amount of expenses owed by the defendant limited to those incurred from the date of seizure through the date of "transfer of ownership" to St. Tammany Parish. I respectfully disagree. In my view, the convictions and sentences should be affirmed.
At the outset, I note that this objection to the amount of restitution was never raised at the initial sentencing. However, I agree with the majority that since this case was remanded for resentencing, we are obligated to now address the merits of the order of restitution and the amounts ordered. I agree with the majority that the trial court had the authority to enter an order of restitution/payment of costs herein. However, I disagree with the majority's conclusion that the amount imposed was improper. In my view, the trial judge acted reasonably, properly, and carefully in determining the appropriate amount and acted within the discretion afforded him under the statute when entering the order for repayment of costs.
In vacating the sentences and order of restitution, the majority states, with no authority stated for doing so, that:
Because LA. R.S. 14:102.2, the only statute fully authorizing the type of expenses involved in this case, clearly contemplates continued ownership of the seized animals, we find, just as Judge Downing originally concluded, the trial court erred in ordering the defendant to pay restitution for boarding and veterinary expenses incurred for the animals after she no longer owned them. Specifically, the majority cites no authority (because in my view, none exists) for its holding that the statute "clearly contemplates continued ownership of the seized animals."
Instead, a careful reading of the statute reflects the following. Pursuant to LSA-R.S. 14:102.2, which addresses the procedure for seizure and disposition of animals cruelly treated and the court's discretion to order payment of costs incurred, the state is specifically required to appoint a veterinarian for animals seized and "shall retain custody." LSA-R.S. 14:102.2(B)(3). Further, the state is required to "[hold]" the animal for 15 consecutive days and thereafter, if a person claiming "an interest" in the animal posts no bond (as per section C to secure payment for all reasonable costs incurred in the boarding and treatment for a 30-day period), the animal may be "humanely disposed of by "sale, adoption, or euthanasia." LSA-R.S. 14: 102.2(B)(4). Notably, section D provides that "upon a person's conviction of cruelty to animals, it shall be proper for the court, in its discretion, to order the forfeiture and final determination of the custody" of any such animal found to be cruelly treated and can order forfeiture of any bond posted, as part of the sentence.
Additionally, and of particular importance in this case, the court is specifically authorized by statute to order, in its discretion, the payment of "any reasonable or additional costs incurred in the boarding or veterinary treatment of any such seized animal prior to its "disposition," (LSA-R.S. 14:102.2(D)). "Disposition" as referenced in the statute is set forth as "humane disposition," i.e., by sale, adoption or euthanasia (LSA-R.S. 14:102.2(B)(4)). Here, the defendant argues (and the majority apparently agree) that "disposition," for purposes of the criminal prosecution and the determination of the proper amount to be imposed as related costs, occurred on the date the defendant executed an agreement in a civil suit by St. Tammany Animal Services against her in which she relinquished any rights of ownership of the animals.
Assuming arguendo that the state can be bound by the agreement between the parish and the defendant in the civil suit against her by St. Tammany and St. Tammany Animal Services, I find no support in the statutes, jurisprudence, or the agreement itself limiting the court's right to impose an order for costs in connection with her guilty plea and conviction of 123 counts of cruelty to animals in these criminal proceedings.[1] Although a copy of the "Transfer of Animals" agreement was filed in these proceedings, the agreement contains no waiver of the state's right to obtain an order for costs associated with the care and boarding of the animals seized. Moreover, the record does not support her claim that she entered into this agreement to absolve herself of then existing or further obligations for costs associated with the care of the animals at issue in these criminal proceedings; nor does the record show that the agreement, by its terms, contemplated or precluded the imposition of the costs incurred by the "custodian" in the discharge of the care specifically required of the custodian and mandated by statute.[2] While somewhat laudable that this defendant, again facing prosecution and a jury trial for her multiple felony counts of cruelty to animals, made a belated effort to do the proper thing by attempting to avoid the further destruction of the dogs seized and to foster the adoption of those dogs not requiring immediate destruction and euthanasia, I disagree with the majority's conclusion that this act of surrender of ownership or further interest in the animals seized precluded the imposition of costs. These costs were incurred solely as a result of the defendant's criminal acts and were incurred directly in fulfillment of the state's statutory duties to appoint a veterinarian or other suitable custodian to provide the mandated care and boarding until final disposition.
In sum, I am not convinced that "disposition," as set forth in the criminal statute occurred, vis-a-vis this defendant's obligations when she relinquished her interest in the animals already seized. Instead, the statute speaks to "seizure," "retention of custody," and "humane disposition ... by sale, adoption or euthanasia."[3]
In my view, as a result of, and upon her conviction of these criminal acts of cruelty, the defendant was subject to an order of payment of all reasonable and necessary costs, occasioned by her acts, until such time as the animals could be "humanely disposed of by sale, adoption or euthanasia." Accordingly, I respectfully dissent and would affirm the defendant's convictions and sentences, including the imposition of costs which were ordered after a hearing, and which I find to be soundly within the discretion afforded the trial court.
NOTES
[1] See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[2] The defendant asserts that of the agencies awarded restitution, only one (St. Tammany Parish Sheriffs Office) is actually entitled to receive restitution. However, she argues that the trial court erred in ordering her to pay the $5,000.00 in restitution to the Sheriffs Office because all of the services rendered by the Sheriffs Office in connection with this case were provided after the March 16, 2004 transfer of ownership to the Parish.
[3] The state has not appealed this portion of the trial court's ruling, which is favorable to the defendant. In its brief, the state concedes the restitution amounts were subject to a credit in the amount of $14,376.00 which represents the amount of the proceeds from the sale of the horses. Therefore, although the defendant claims in one section of her brief that "[o]wnership of the horses allowed the parish to sell them and keep the profit[,]" and later, in a different section, argues her entitlement to a credit for the proceeds of the sale, this portion of the trial court's ruling presents nothing for this court to review in connection with the defendant's appeal.
[4] The defendant explained, "Your honor, I'm a pure D pig. A probation officer is going to come to my house, and see things laying there. And I never dust. And 1 don't buy furniture because I don't care nothing about furniture... This is not very clean. I'm not clean with any house. My house is a pig sty."
[5] Under LSA-C.Cr.P. art. 895.1, which specifically enumerates the parties who may receive restitution as a condition of probation, the St. Tammany Parish Sheriffs Office is the only agency to which the trial court was authorized to order restitution.
[1] The document, entitled "TRANSFER OF ANIMALS," was filed in the matter of "Parish of St. Tammany through St. Tammany Animal Services versus Janis A. Walder" bearing docket No. 2004-11217 in the Twenty-Second Judicial District Court for the Parish of St. Tammany.
[2] Indeed, as set forth in the transfer document, the defendant acknowledges therein that "[h]er purpose in signing this document is to facilitate the adoption of as many of the dogs [seized] as possible." Moreover, she acknowledges therein that she "understands . . . that upon signing this transfer of ownership of the animals, St. Tammany has sole ownership and control of the animals . . . and has the sole right to determine the disposition of the animals which includes but is not limited to the sale, adoption or destruction of the animals." She further "agrees to indemnify and hold harmless St. Tammany from any and all causes of action which may exist or may exist in the future as a result of the seizure by St. Tammany and resulting transfer of ownership of the animals to St. Tammany.
[3] I further find no merit to the defendant's argument that the various agencies who rendered care are not parties for whom "restitution" may be imposed. By its very terms, LSA-R.S. 14:102.2, "Offenses Affecting the Public Sensibility," contemplates the involvement of "the department, agency, humane society or other custodian of the animal as authorized by the court in accordance with the current rate for board and on the condition of the animal after examination by a licensed veterinarian" when evaluating, for example, the amount of bond for costs in such cases. Further, the statute specifically authorizes the court to order payment of "any reasonable or additional costs incurred in the boarding or veterinary treatment of any seized animal prior to its disposition, whether or not a bond was posted by the defendant." See LSA-R.S. 14:102.2(D).